IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAYNE STALLINGS,

Plaintiff,

v.

CITY OF JOHNSTON CITY,
municipal corporation, and JIM
MITCHELL, in his individual and
official capacity, and GREG
YELENCICH, in his individual and
official capacity,

Defendants.                                   Case No. 13-cv-422-DRH-SCW

MEMORANDUM and ORDER

HERNDON, Chief Judge

I.       Introduction

Now before the Court is defendants City of Johnston City's (Johnston City),
Jim Mitchell's (Mitchell), and Greg Yelencich's (Yelencich) (collectively,
defendants) motion to dismiss plaintiff Jayne Stallings' (Stallings) amended
complaint (Doc. 15). Based on the following, the Court **GRANTS in part and
DENIES in part** defendants' motion.

II.       Background and Allegations

Johnston City employed Stallings as the Water Office Supervisor from
March 28, 2000, until December 18, 2012, and a Collective Bargaining contract

governed her position (Doc. 4, ¶¶ 11-13).  On October 27, 2011, Mitchell (Mayor of Johnston City) and Yelencich (Water Alderman of Johnston City), Stallings' supervisors, informed Stallings "through a single page of paper" that she was suspended without pay due to suspicion and possible evidence of money missing from the water/sewer department, and further wrote: "There will be no further discussion of this matter now!" (Doc. 4, ¶ 15).  Stallings was not provided with an explanation or hearing regarding the basis of her suspension without pay (Doc. 4, ¶ 17).  Stallings' suspension lasted over a year, from October 27, 2011, until December 18, 2012, when a letter from Mitchell informed her of her termination (Doc. 4, ¶ 20).  Mitchell did not provide Stallings any alleged facts concerning her termination (Doc. 4, ¶ 21). Further, Stallings alleges Mitchell and Yelencich made public, false, and defamatory statements that Stallings committed criminal acts (Doc. 4, ¶¶ 24-27).

Based upon the above alleged actions of Johnston City, Mitchell, and Yelencich, Stallings filed this action on May 1, 2013 (Doc. 2).  On May 6, 2013, Stallings filed a five-count amended complaint (Doc. 4).  The amended complaint is comprised of Counts I, II, and III, alleging Johnston City ("Municipal Liability"), Mitchell ("Individual Capacity"), and Yelencich ("Individual Capacity"), respectively, deprived Stallings of her property and liberty rights without due process; and Counts IV and V, against Mitchell and Yelencich, respectively, for intentional infliction of emotional distress (IIED).

Defendants argue Counts I-III fail to adequately allege the elements of a due process claim. As for Counts IV and V, Mitchell and Yelencich argue Stallings fails to adequately allege extreme or outrageous conduct. Alternatively, Counts IV and V describe acts that are absolutely privileged, and/or for which Mitchell and Yelencich are immune from tort liability and punitive damages.

### III.   Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

Even though *Twombly* (and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted).

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See*

*Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

With these principles in mind, the Court turns to Stallings' amended complaint.

## IV.   <u>Analysis</u>

### a.  Counts I, II, and III: Due Process

Counts I, II, and III allege that Stallings' suspension and termination without a hearing, and Mitchell and Yelencichs' public statements, deprived Stallings of constitutionally protected property and liberty interests without due process.  Defendants contend that Stallings fails to properly allege the elements of a due process claim.

### i.  Property Interest

A cause of action for a procedural due process violation requires a plaintiff to allege "a cognizable property interest, a deprivation of that interest, and a denial of due process."  *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)). Defendants' arguments focus on whether Stallings has adequately alleged a cognizable property interest.

A property interest in continued employment can be created by: 1) an independent source, i.e., state law securing certain benefits; or 2) a clearly implied promise of continued employment.  *Id.* (citing *Phelan v. City of Chicago,*

347 F.3d 679, 681 (7th Cir. 2003)). "[E]ntitlement to continued employment," means that a plaintiff must have "a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause."  *Id.* (quoting *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988)).

Stallings' amended complaint alleges a "Collective Bargaining contract" (CBA) governed her position with Johnson City (Doc. 4, ¶ 13). The Supreme Court and the Seventh Circuit have noted that CBAs only create a contract for employment in rare cases. *See Krieg v. Seybold,* 481 F.3d 512, 519-20 (7th Cir. 2007); *see also J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 334-35 (1944) (stating that a CBA is not "a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone")).  Thus, "[w]hen a plaintiff alleges that the due process entitlement arises from a collective-bargaining agreement, he [or she] must identify specific terms of the agreement that contained a promise of continued employment." *Palka,* 623 F.3d at 452 (citing *Krieg,* 481 F.3d at 520).

Defendants argue that because Stallings fails to attach the relevant CBA to her amended complaint or identify any provision within the agreement that would give rise to a constitutionally protected property interest, her claims are insufficient. In response, Stallings attaches a copy of the CBA (Doc. 18-1).[1] Stallings cites Article 12: Discharges and Suspensions, which states:

---

[1] Although the parties do not raise the issue, the Court notes that it must convert a Rule 12(b)(6) motion to one for summary judgment to consider materials outside the pleadings. *See* Fed. R. Civ.

> No employee covered by the terms of this Agreement shall be
> discharged without just cause
>
> .   .   .
>
> An employee may be suspended for up to five working days for
> just cause.

(Doc. 18-1, p. 9).

Assuming Stallings' assertions to be true, she was suspended for over a year without pay, a hearing, or even an explanation. Thereafter, she was terminated without a hearing. Stallings has cited a specific provision of the CBA which demonstrates Stallings has adequately alleged a "legitimate claim of entitlement not to lose a valuable governmental benefit except for cause." *Lee*, 862 F.2d at 141. Stallings has thus adequately alleged a property interest in continued employment.

Defendants further argue that Stallings must allege she has exhausted her administrative remedies. Defendants argue exhaustion of remedies is required to bring a due process claim under these circumstances, "because remedies under a CBA grievance procedure provide adequate due process." Defendants state that Stallings met with defendants prior to her termination and that there is a union grievance pending.

---

P. 12(d); *R.J. Corman Derailment Servs., LLC v. Intl. Union of Operating Eng'rs., Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). However, when the moving party presents "concededly authentic" documents referred to in the complaint and central to its claims, a district court is not required to convert the motion. *Santana v. Cook County Board of Review*, 679 F.3d 614, 619 (7th Cir. 2012); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also* Fed. R. Civ. P. 10(c). The Court finds it is not required to convert defendants' motion to one for summary judgment to consider the CBA.

Defendants' arguments concerning the adequacy of the CBA's grievance procedures demonstrate that they have lost sight of the task at hand. This case is at the dismissal stage. Defendants have not provided the Court with any authority demonstrating exhaustion of administrative remedies is a required element of Stallings' claims. Defendants' reliance on *Winston v. U.S. Postal Serv.*, 585 F.2d 198, 210 (7th Cir. 1978), in which the Seventh Circuit affirmed a grant of summary judgment against the plaintiff finding the grievance procedures at issue did not violate due process, is misplaced. We are not yet at the summary judgment stage. Assuming the truth of Stallings' allegations and drawing all inferences in her favor, she has adequately alleged a deprivation of her continued interest in her employment without due process.

### ii.  Liberty Interest

Defendants also contend that Stallings fails to properly allege deprivation of a liberty interest. Liberty interest includes occupational liberty, i.e., "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992).  Deprivation of occupational liberty "may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his [or her] good name, honor or reputation or imposes a stigma that forecloses other employment opportunities." *Palka*, 623 F.3d at 454 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972)).

Stallings alleges that Mitchell and Yelencich made "public statements that Stallings committed criminal acts during her employment with Johnston City," and that such statements were false. Drawing all reasonable inferences in Stallings' favor, she has plausibly alleged a claim for deprivation of her occupational liberty interest without due process.

### b.  Counts IV and V: IIED

Counts IV and V allege a state law claim for IIED.  Mitchell and Yelencich maintain that Stallings fails to state a claim for IIED, their acts are absolutely privileged, they are entitled to tort immunity, and that they are immune from punitive damages liability.

### i.  Conduct not Extreme and Outrageous

In Illinois, to establish a *prima facie* case of IIED, a plaintiff must allege that: (1) defendant engaged in truly extreme and outrageous conduct; (2) defendant either intended that her conduct inflict severe emotional distress, or there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law)).  The tort does not reach "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).  On the

contrary, "the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490.

Mitchell and Yelencich contend that their conduct "was not extreme or outrageous as a matter of law" as required under the first prong of IIED (Doc. 15, p. 9). Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46 cmt. D (1965) (internal quotations omitted)). In *McGrath*, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809-10. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id.*

In the context of an employer-employee relationship, courts have found extreme and outrageous behavior where the "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491. Another factor that courts consider is "whether the defendant reasonably believed that his objective was legitimate; greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id.* at 491.

Presuming Stallings' contentions to be true and drawing all reasonable inferences in her favor, the Court finds that Stallings' allegations are sufficient. Stallings alleges that both Mitchell and Yelencich "intentionally abused [their] position[s] of power and influence and made unsubstantiated and unjustified personal attacks on Stallings that, under the circumstances, amounts to extreme and outrageous conduct."

The alleged circumstances surrounding the claim for IIED are: 1) Mitchell and Yelencich suspended Stallings without pay for more than a year, despite having no actual evidence of criminal conduct by Stallings; 2) Mitchell and Yelencich had no evidence of criminal conduct by Stallings when they terminated Stallings' employment with Johnston City; 3) Despite a lack of evidence, both Mitchell and Yelencich repeatedly made public statements accusing Stallings of criminal conduct; 4) Both Mitchell and Yelencich intended or knew that there was a high probability that their conduct would cause Stallings severe emotional distress; 5) Both Mitchell's and Yelencich's conduct did in fact cause Stallings severe emotional distress; and 6) As a direct and proximate result of both Mitchell's and Yelencich's intentional, extreme and outrageous conduct, Stallings suffered actual extreme and severe emotional distress, humiliation, embarrassment, and loss of enjoyment of life, and will continue to suffer in the future (Doc. 4).

The Court finds that the alleged facts contained in the amended complaint state a cause of action against both Mitchell and Yelencich for IIED. Mitchell and

Yelencich challenge the severity of their alleged conduct, but currently, the exact content and extent of the allegations is unknown.

### ii. Defenses

### 1. Absolute Privilege

Alternatively, Mitchell and Yelencich state that, "[c]ourts have long held that absolute privilege exists for federal, state, or municipal officials that make otherwise defamatory statements in the performance of their official duties" (Doc. 15, p. 10). Thus, they argue Counts IV and V for IIED require dismissal on the basis of this affirmative defense.

Illinois courts recognize that legislative and executive officials at the state and local level cannot be held liable for statements made within the scope of their official duties. *Loniello v. Fitzgerald*, 356 N.E.2d 842, 844 (Ill. App. 1976); *Gieck v. Kay*, 603 N.E.2d 121, 127 (Ill. App. 1992) ("As an official of the executive branch of a local government, Kay cannot be held liable for statements made within the scope of his official duties.").

Mitchell and Yelencich argue they are "entitled to absolute immunity from liability for any alleged public statements they made about Stallings" (Doc. 15, p. 12). Stallings responds that her allegations demonstrate Mitchell and Yelencich did not make their statements in the performance of their official duties. Stallings argues, "[g]oing around town and falsely accusing a person can never be a statement made in the scope of the Mayor's or Alderman's official duties."

The Court finds dismissal on absolute privilege grounds is not appropriate on a Rule 12(b)(6) motion in this instance. A complaint must plead enough facts to demonstrate that relief is plausible; it need not anticipate affirmative defenses and attempt to defeat them. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). As absolute privilege is a defense, the issue is whether Stallings' amended complaint establishes as a matter of law that absolute privilege bars her claims for IIED. It does not. The Court cannot determine from the amended complaint alone whether Mitchell and Yelencichs' alleged actions were made within the scope of their official duties. Stallings' allegations plausibly encompass actions made outside the scope of Mitchell and Yelencichs' official duties. Thus, absolute privilege does not provide a basis for dismissal under Rule 12(b)(6).

### 2. Tort Immunity

Mitchell and Yelencich also raise the affirmative defense of tort immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). Mitchell and Yelencich cite Section 2-201 of the Tort Immunity Act which provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even when abused.

745 ILCS 10/2-201.   Thus, immunity from suit pursuant to Section 2-201, requires both an act of discretion and a policy decision.  *Harinek v. 161 North Clark Street Ltd. Partnership*, 692 N.E.2d 1177, 1181 (Ill. 1998).   A

discretionary act is one that is unique to a particular public office and performed with a degree of flexibility. *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995). A policy choice requires a governmental employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests. *Van Meter v. Darien Park Dist.* 799 N.E.2d 273, 285 (Ill. 2003).

Section 2-201 does not apply to ministerial actions. *See In re Chicago Flood Litig.*, 680 N.E.2d 265, 272 (Ill. 1997). Ministerial acts are performed on a given state of facts in a prescribed manner, under the mandate of legal authority, without reference to an official's discretion regarding the propriety of the act. *See Snyder*, 657 N.E.2d at 993. Ministerial acts do not involve any sort of judgment or determination, but the execution of a set task that is "absolute, certain, and imperative." *Chicago Flood Litig.*, 680 N.E.2d at 272 (quoting *City of Chicago v. Seben*, 46 N.E. 244, 246 (Ill. 1897)).

Mitchell and Yelencich bear the burden of demonstrating statutory immunity bars Stallings' claims for IIED. *See Van Meter*, 799 N.E.2d at 284. Again, as this is a Rule 12(b)(6) motion, immunity must be apparent on the face of the amended complaint to warrant dismissal. It is not apparent from the face of the amended complaint, or Mitchell and Yelencichs' general arguments, that Mitchell and Yelencich are afforded statutory immunity for Stallings' allegations contained within Counts IV and V at this stage in the proceedings. The Court will not dismiss Stallings' Counts IV and V on this basis at this time.

### iii.  Punitive Damages

Mitchell and Yelencich argue that Stallings cannot recover punitive damages on her claims for IIED based on Section 2-102 of the Tort Immunity Act.  Section 2-102 states:

> [N]o public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102.

The Court finds it unnecessary to determine whether Section 2-102 bars punitive damages for Stallings' Counts IV and V. According to the law of Illinois, plaintiffs are not entitled to punitive damages for IIED claims.  *Knierim v. Izzo*, 174 N.E.2d, 157, 165 (Ill. 1961); *see also Casey-Beich v. United Parcel Service*, 295 F. App'x 92, 94 (7th Cir. 2008)).   Therefore, Stallings' punitive damages requests contained in Counts IV and V against Mitchell and Yelencich are hereby stricken.

### V.    <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS in part and DENIES in part** defendants' motion (Doc. 15). The motion is granted to the extent that Stallings' requests for punitive damages in Counts IV and V are stricken. In all other respects, defendants' motion is denied.

**IT IS SO ORDERED.**

Signed this 4th day of November, 2013.

Digitally signed by
David R. Herndon
Date: 2013.11.04
12:43:17 -06'00'

**Chief Judge**
**U. S. District Court**