IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAYNE STALLINGS,**

**Plaintiff,**

    **v.**

**CITY OF JOHNSTON CITY,**
**municipal corporation, and JIM**
**MITCHELL, in his individual and**
**official capacity,**

**Defendants.**　　　　　　　　　　Case No. 13-cv-422-DRH-SCW

## MEMORANDUM and ORDER

**HERNDON, District Judge**

    Now before the Court are cross motions for summary judgment. Defendants City of Johnston City's and Jim Mitchell filed their motion for summary judgment on July 22, 2014 (Doc. 58). Thereafter, plaintiff Jayne Stallings filed her motion for summary judgment later that same day (Doc. 60). Defendants contend that they are entitled to summary judgment because the due process claim fails on all accounts, as all requisite steps relating to grievance procedures were satisfied in compliance with the Due Process Clause. Additionally, they seek summary judgment as to the IIED claim, arguing that Stallings failed to satisfy the requisite burden necessary to bring such a claim. Stallings contends that summary judgment should be granted in her favor because her IIED burden was met when

she satisfied the necessary elements of the claim and because she was deprived of pre-termination due process rights afforded to her under the Collective Bargaining Agreement ("CBA"). Because the Court finds that there are disputes of material facts, which the Court cannot, by operation of law, resolve at this stage, the Court denies both motions.

## I. Introduction and Background

Johnston City employed Stallings beginning in April 2000. In 2008 Stallings was promoted from Water Clerk to the Water Office Supervisor, a position that she occupied until December 18, 2012. Stallings' employment was governed by a Collective Bargaining Agreement ("CBA")(Doc. 4). Under Article 8 of the CBA, Johnston City had the right to "[t]ake whatever action may be necessary to carry out the missions of the City in situations of emergency" (Doc. 58 citing CBA 1147).

On October 27, 2011, Mitchell (Mayor of Johnston City), who also served as Stallings' supervisor, informed Stallings that she was suspended without pay due to suspicion and possible evidence of money missing from the water/sewer department (Doc. 4). Stallings was allegedly not provided with an explanation or hearing regarding the basis of her suspension without pay. Stallings' suspension lasted over a year, from October 27, 2011, until December 18, 2012, until a letter from Mitchell informed her of official termination (Doc. 60).

Prior to Stalling's suspension and later termination, on September 20, 2011, Rena Renee Watson, a Water Department employee, stated that customers began

contacting her with complaints that their water was cut off despite timely paying their water bills. (Doc. 61-2). The customers showed Watson paid receipts (*Id.* at 80). Watson checked the computer records in the D-Login billing software, yet there was no record of payments.

On October 27, 2011, Watson advised Mitchell of the missing money in the water department after questionable adjustments were recorded in the month of September (Doc. 58-5, p.39-41). Later that afternoon, Mitchell suspended Stallings and gave her a written letter that said: "We have suspicion and possible evidence of money missing from the Water/Sewer Dept. You are now suspended without pay. There will be no further discussion of this matter now! We need your City Hall key back. We will meet again Wednesday, November 2nd at 11:00a.m. Please have your union representation present." (Doc. 58-3, p.23).

On November 2, 2011, Stallings, her union representative Bill Trout, and personal attorney Mike Riva attended a meeting with Johnston City representatives including Mitchell and Richey. (Doc. 58). At that meeting Stallings and Riva were informed of the FBI's investigation, which ultimately did not result in charges against plaintiff.

On December 18, 2012, over one year after the start of her initial unpaid suspension, Defendant Mitchell terminated Stallings from the Water Department (Doc. 60). On May 6, 2013, plaintiff filed an amended complaint putting forth two causes of action presently at issue in this these motions: a federal claim pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that Stallings was deprived of her

due process rights to a pre-termination hearing under the terms of the Collective Bargaining Agreement (CBA), which governed her employment, and an Illinois cause of action for intentional infliction of emotional distress (IIED) resulting from alleged statements made about Stallings' purported guilt.

Presently before the Court is defendant's motion for summary judgment on both claims (Doc. 58). Defendants Johnson City and Jim Mitchell argue that the due process claim fails on all accounts, as all requisite steps relating to grievance procedures were afforded to Stallings. Summary judgment dismissing the state law claim is sought on the additional ground that Plaintiff failed to satisfy the elements of IIED.

As to plaintiff's cross-motion for summary judgment, Stallings seeks summary judgment by arguing opposite facts as defendants (Doc. 60). Plaintiff claims that summary judgment is appropriate on the §1983 claim due to pre-termination due process deprivations, arguing that Stallings was not provided with adequate notice or opportunity for a hearing, and was never provided with the evidence against her. Moreover, plaintiff argues that Mitchell must be held liable for his conduct as mayor in the §1983 action. Furthermore, as to the IIED claim, plaintiff argues that summary judgment is appropriate, as she adequately established the required elements of an IIED claim. The Court will address each claim in turn.

## II. **LEGAL STANDARD**

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled

to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

### III. Analysis

#### a. Due Process

To prevail on a claim alleging a procedural due process violation, a plaintiff must allege "a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton,* 623 F.3d 447, 452 (7th Cir. 2010) (citing *Hudson v. City of Chicago,* 374 F.3d 554, 559 (7th Cir. 2004)). Due process requires some type of hearing prior to the takings as well as some opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Defendants' concede that Stallings had a cognizable property interest in her job through the CBA (Doc. 58). However, defendants' argue that Stallings was not deprived of that interest without due process, as pre-termination due process does not require that a hearing take place, and if one does, it "often need not be elaborate or extensive". *Hudson v. City of Chicago*, 374 F.3d 554,560 (7th Cir. 2004).

The compulsory prerequisite of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process, however, "is not a 'technical conception with a fixed content unrelated to time, place and circumstances'... [;][t]hus, the precise form and extent of process required in a particular situation will vary from other factual situations." *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 688 (7th Cir.2001).

Defendant argues that adequate notice was afforded to plaintiff, both orally (Doc. 58-6) and in written form. The oral notice which took place as part of an "extensive office conference" between Johnston City's attorney, John Richey, and Stallings's attorney, Mike Riva also allegedly served as the time at which Richey provided Riva with the spreadsheet depicting the "suspicious adjustments in questions and explained Johnson City's suspicions" (Doc. 66).

However, plaintiff not only argues in her pleadings that "Stallings was never told of any charges against her," but also that she was never provided with evidence prior to her suspension. Stallings response specifically states that "Defendant Mitchell specifically refused to give Stallings or her attorney, Mike Riva ("Riva") any reason for her second suspension. (Doc. 61-5 at 32-34; Doc. 61-12 at 16-17). Defendant Mitchell just suspended Stallings without any details claiming he would not do so "until [Defendants] could get the investigation from the FBI [Federal Bureau of Investigation]." (Doc. 61-5 at 35)" (Doc. 65).

The record plainly shows that there is a genuine issue of material fact between the parties on the dispositive issue of the scope of pre-termination process, specifically as to the evidence element under *Loudermill*. Accordingly, neither party is entitled to summary judgment as a matter of law on plaintiff's § 1983 claim.

### b. Intentional Infliction of Emotional Distress (IIED)

To withstand summary judgment on an intentional infliction of emotional distress claim, a plaintiff must establish that: (1) the defendant's conduct was

extreme and outrageous, (2) the defendant intended that their conduct would cause severe emotional distress, or there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law)); *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994). Furthermore, IIED requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).

Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d at 507 (quoting Restatement (Second) of Torts § 46 cmt. D (1965)). In *McGrath*, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809-10. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id.*

Defendants contend that Mitchell's conduct "was not extreme or outrageous as a matter of law" as required under the first prong of IIED using and that the statements (Doc. 58). Mitchell argues that this case is consistent with the Illinois cases in which summary judgment was granted against plaintiffs who failed to show extreme and outrageous conduct. See e.g., *Van Stan v. Fancy Colours & Co.*,

125 F. 3d 563 (7th Cir.1997); *McKay v. Town and Country Cadillac, Inc.*, 991 F.Supp. 966, 972 (N.D.Ill.1997) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702–703 (7th Cir.1993) (Docs 58, 66).

Plaintiff's argues that defendant Mitchell's conduct and public statements were so outrageous that summary judgment in favor of the plaintiff is appropriate (Doc. 61). Plaintiff cites to the lack of witness interviews and direct evidence, and emphasizes that the basis for the charges against Stallings was the arbitration transcript and mere suspicion of missing money (Doc. 25-2, Doc. 61-15 p. 40-41). Furthermore, plaintiff argues that Mitchell's "suspension" was the reason behind Stallings' 14-month suspension, when undisputed facts exist showing that Johnson City's books were in disarray in the months leading up the alleged discrepancy (Doc. 61-18; Doc. 61-2 at 50-51).

In the context of a relationship involving an employee and her employer, courts have found extreme and outrageous behavior in situations where an "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker,* 256 F.3d at 491. Another factor often considered by courts is "whether the defendant reasonably believed that his objective was legitimate; greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id.* at 491. In Mitchell's dual-role as mayor and Stallings' supervisor, the parties disagree as to this point.

### i. Tort immunity

Mitchell raises the affirmative defense of tort immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), specifically in relation to the public statements made allegedly accusing Stallings of criminal conduct (Doc 58, p.17-20) . Mitchell cites Section 2-201 of the Tort Immunity Act which provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even when abused.

745 ILCS 10/2-201.  Thus, immunity from suit pursuant to Section 2-201, requires both an act of discretion and a policy decision.  *Harinek v. 161 North Clark Street Ltd. Partnership,* 692 N.E.2d 1177, 1181 (Ill. 1998).  A discretionary act is one that is unique to a particular public office and performed with a degree of flexibility.  *Snyder v. Curran Twp.,* 657 N.E.2d 988, 993 (Ill. 1995).  A policy choice requires a governmental employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests. *Van Meter v. Darien Dist.* 799 N.E.2d 273, 285 (Ill. 2003).

There is some dispute as to the context and scope of Mitchell's statements, as Section 2-201. The burden of establishing entitlement to immunity, as an affirmative defense, is on Mitchell. *See Van Meter,* 799 N.E.2d at 284. Mitchell failed to put forth sufficient evidence demonstrating his statutory immunity to bar Stallings' claims for IIED. As Stalling's alleges, Mitchell's assertions that his

statements were made "in the performance of his official duties" are conclusory statements that fail to meet the burden to establish an affirmative defense (Doc. 58). Upon reviewing the facts, depositions, and pleadings, a genuine issue of material fact still exists as to Stalling's IIED claim against Mitchell.

Additionally , as a general matter, the Court agrees that Illinois law recognizes that reasonable people can sometimes differ on questions of fact about extreme and outrageous conduct. Because the issue of outrageous conduct is clearly disputed, in addition to the scope of Mitchel's statements for tort immunity purposes, neither party is entitled to summary judgment as a matter of law on plaintiff's IIED claim.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** defendant's motion for summary judgment (Doc. 58). Further, plaintiff's cross-motion for summary judgment is **DENIED** (Doc. 60).

**IT IS SO ORDERED.**

Signed this 27th day of March, 2015.

Digitally signed by
David R. Herndon
Date: 2015.03.27
14:29:46 -05'00'

**United States District Judge**